### SCHWIER v. HURLBURT.

1. FRAUD—SALES—DECEIT—EQUITY—SETTING ASIDE SALE.

Where complainant's bill averred, and testimony tended to show, that the defendants, in making the sale to complainant of a garage and automobile repair business, in order to induce complainant to buy, represented that the revenue from the business was eight hundred dollars a month for the storage of cars, and that the total earnings exceeded twelve hundred dollars a month, when in fact the business was a losing venture and not profitable as represented, also that the accounts payable were several times the amount stated by the defendants, and the accounts receivable less than stated by defendants, the court of equity was warranted in holding that the sale was void for fraud and in setting aside the transaction for the alleged false representations.

2. PARTNERSHIP—ESTOPPEL—REPRESENTATIONS AS TO EXISTENCE OF PARTNERSHIP.

Where two parties held themselves out as partners in the conduct of an automobile garage and storage business, purchasers of the property, who dealt with the partner-

ship as such, were entitled to rely upon the existence of
the relation upon the ground of estoppel.

3. SAME—DISSOLUTION.

While a partnership may be dissolved by a valid sale of
the assets and business, the effect of a voidable sale, which
the purchaser rescinds on the ground of fraud, is not
to work a dissolution of the firm: the assets remaining
the property of the firm upon the rescission or attempt
of the purchaser to rescind by tendering back the busi-
ness and property.

Appeal from Wayne; Hosmer, J. Submitted Janu-
ary 18, 1915. (Docket No. 68.) Decided March 18,
1915.

Bill by Henry F. Schwier against Howard C. Hurl-
burt and Henry C. Houghten and others, to set aside
a purchase of a business property. From a decree for
complainant, defendants appeal. Affirmed.

*Edmund J. Stafford* and *Harry J. Dingeman,* for
complainant.

*Ralph B. Wilkinson,* for defendants.

BROOKE, C. J. The bill of complaint in this case is
filed for the purpose of securing a decree setting aside
a sale of a certain business, known as the Riverview
Auto Garage, together with some personal property
and an interest in certain real estate, made by defend-
ants to complainant on January 18, 1912, upon the
grounds of fraud and misrepresentation. Complain-
ant sought, not alone the setting aside of the transac-
tion, but a return to him of the consideration paid.

It appears that some months prior to said 18th day
of January, 1912, the two defendants Houghten and
Hurlburt had engaged in the enterprise in question.
Such money as was invested therein seems to have
been contributed by defendant Houghten, while de-
fendant Hurlburt seems to have been in the active

management of the business. It is the claim of the complainant that these two men were partners in the business, and that both are bound by whatever representations were made by either. We have carefully examined this record, and are of opinion that, at the time the contract in question was made, the two defendants were, through representations made to the world, partners, at any rate as to third persons, including the complainant. Most of the alleged false representations were said to have been made by defendant Hurlburt, though some of those of a material character are likewise said to have been made by defendant Houghten. Complainant claims that the false representations consisted in the following:

"(a) That said business was a very large and profitable one; that the gross earnings were between $1,200 and $1,400 per month; that the actual revenue to said business from the storage of automobiles was $800 per month derived from the storage of 30 gasoline cars at $15 per month and 10 electric cars at $32.50 per month, the transient storage bringing the total for storage up to $800, and the difference being made up from the sale of gasoline and rentals from taxicabs.

"(b) That the accounts payable of said business were $1,646.17, plus $789 due on a furnace contract.

"(c) That the accounts receivable were $1,314.88."

It was averred in the bill and shown on the trial that, relying upon these representations, the complainant purchased the business in question, taking a bill of sale of the personal property, assignment of the contract for the purchase of the real estate, and paid therefor in cash the sum of $448, and executed and delivered promissory notes to the total amount of $7,500, and further assigned land contracts to the defendant of a total value of $2,310, making in all a consideration of approximately $10,000.

The bill avers, and the testimony tends to prove, that the representations as to the revenue were false

in that, instead of receiving a total revenue of $800 a month from the storage of cars, there was received but $392.50 upon that account, and that the business, instead of being a large and profitable one, was and had been a losing venture. It was also claimed and proven on behalf of complainant that the accounts payable of said business were upwards of $5,000 instead of $1,646.17, as represented by defendants, and that the accounts receivable were $72.78 less than represented.

Complainant seems to have gone into possession of the business on January 19, 1912. He discovered the discrepancies between the actual earnings of the business and the earnings as represented by the defendants to him immediately after going into possession, and testified of a conversation with defendant Houghten on January 21st as follows:

"After I discovered these differences I talked with Mr. Houghten in the garage one day; January 21st, I believe it was. I told him that Mr. Hurlburt had represented to me that they had $800 in storage, and that I found that they had $392.50. I told him I could not handle it under these conditions, and that I wanted to get back what I gave. I also told him that he owed $5,000 instead of $1,600, as he represented. He said he knew he owed $5,000 there, and that he had agreed to pay anything over $1,600. There had been no such talk. He did not tell me at the time he made the deal that he knew he owed more than that. If I had known of the difference of $2,400 or $2,600, I would not have made the deal. At the time I turned back the business, Mr. Houghten was out of town, and I turned it back to Mr. Hurlburt and executed a bill of sale to them. Mr. Hurlburt took the business, and he said, 'I am glad to get it back, and I only wish I had what you gave Mr. Houghten to give you back.' He says, 'We handed you something.' I conducted the business nine days, and during that time paid one pay roll, amounting to $113, and $25 for additional help. I spent $158 during the time I ran the business. I do

not know how much the receipts were I took in. I left the money in the cash drawer."

It appears that, very shortly after the consummation of the deal, the defendant Houghten left the city for a time, and, at the time the complainant retransferred the business to Hurlburt, he was still absent.

On behalf of defendants and appellants, it is claimed that no partnership in fact existed between the defendants Houghten and Hurlburt. We are of opinion that, whatever their relations as between themselves may have been, they are estopped from denying that as to third parties they were partners.

The further claim is made that, even if they were partners, the sale of the business, which included all of the assets of the partnership of defendants, worked a dissolution of such partnership, citing *Potter* v. *Tolbert*, 113 Mich. 486 (71 N. W. 849). Based upon this decision, the defendants claim that neither party had power to bind the other party by any new contract, acceptances, payments, or any other matters which rely upon the existence of a partnership for the binding effect thereof after said dissolution, citing *Goodspeed* v. *Plow Co.*, 45 Mich. 322 (7 N. W. 902); *Johnson* v. *Emerick*, 70 Mich. 215 (38 N. W. 223); and *Potter* v. *Tolbert*, 113 Mich. 486 (71 N. W. 849).

It must, we think, be obvious that this argument is based upon the assumption that the business was in fact sold by the defendants to the complainant. Complainant's bill proceeds upon the theory that by reason of the fraud and misrepresentation of defendants, although a sale in form was made, in contemplation of law there was only a voidable sale. This was the conclusion reached by the learned trial judge who heard the case, and in that conclusion we must agree. It is therefore apparent that, at the time the tender of the business back to the defendants was made by the complainant to the defendant Hurlburt,

Houghten and Hurlburt were, as to this business and as to the complainant, still partners, in contemplation of law.

The learned trial judge had the advantage of seeing and hearing the witnesses. In a doubtful case this fact would have weight with the appellate court. In the case at bar, however, we find it unnecessary to have recourse to that principle, for the reason that a careful reading of the record convinces us that a deliberate attempt was made by the defendants to induce the contract through the making of false and fraudulent representations.

The decree of the court below is affirmed, with costs to the complainant.

McALVAY, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.